IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KERRI M. HILL, | ) |
|                  Plaintiff, | ) Case No. 8:04CV613 |
| vs. | ) **MEMORANDUM OPINION** |
| EMERGENCY DENTAL, INC., | ) **AND ORDER** |
| BRENTWOOD DENTAL GROUP, INC., | ) |
| MICHAEL OBENG, JARED DERR, | ) |
|                  Defendants. | ) |

Plaintiff Kerri Hill (Dr. Hill), a Korean-American woman, brought this action against defendants Emergency Dental, Inc. (Emergency Dental), Brentwood Dental Group, Inc. (Brentwood Dental), Michael Obeng (Dr. Obeng), and Jared Derr (Derr), alleging retaliation, sex and race discrimination, and various state law claims. Presently before the court are Emergency Dental and Derr's motion for summary judgment (Filing No. 99) and Brentwood Dental and Dr. Obeng's motion for summary judgment (Filing No. 109). Because Dr. Hill was an independent contractor rather than an employee, the court grants, in part, the motions for summary judgment.

I.   BACKGROUND
    A.   Facts

The following facts have been admitted by Dr. Hill or are viewed in the light most favorable to Dr. Hill. In 1994, Dr. Obeng, a dentist, opened a dental office in Brentwood Plaza in La Vista, Nebraska. In 1998, Dr. Obeng incorporated Brentwood Dental, a Nebraska corporation providing family, general, and cosmetic dental care. Dr. Obeng and his wife were the sole shareholders, directors, and officers of Brentwood Dental. Brentwood Dental eventually opened two additional offices in the Omaha area, for a total of three locations: (1) 156th Street and West Dodge Road (156th Street office), (2) 84th Street and West Center Road , and (3) South 36th Street in Bellevue, Nebraska.

In 1996, Dr. Obeng incorporated Emergency Dental, a Nebraska corporation primarily providing after-hours emergency dental care. Initially, Dr. Obeng, Dr. Obeng's wife, Dennis Flynn, and Jean Flynn were Emergency Dental's sole shareholders. In 1998, Dr. Obeng and his wife purchased all of the Flynns' shares. Emergency Dental maintained two offices: (1) L Street, and (2) Cass Street. Dr. Obeng oversaw the dentists at Emergency Dental.

Brentwood Dental and Emergency Dental maintained separate bank accounts; employed separate bookkeepers, clerical staff, and dental assistants; paid employees separately; filed separate tax returns; and maintained separate computer systems. On approximately 50 to 100 occasions between 1996 and 2004, Brentwood Dental and Emergency Dental shared supplies, including X-ray film and impression material. On occasion, if Brentwood Dental or Emergency Dental was short on funds, Dr. Obeng took money from the other company to pay the bills.

On June 2, 2002, Dr. Hill began practicing dentistry at Brentwood Dental. On July 1, 2002, Dr. Hill entered into a written agreement with Brentwood Dental to work as a dentist at Brentwood Dental.[1] Based on Dr. Hill's discussions with Dr. Obeng and Dr. Hill's consultation with an attorney, Dr. Hill believed the July 1, 2002, agreement created an independent contractor relationship between herself and Brentwood Dental.

Dr. Hill first worked with Dr. Obeng at the Brentwood Dental office in La Vista. After a couple weeks, Dr. Hill began working at the new Brentwood Dental office located at the 156th Street office. The 156th Street office employed three support staff employees. Dr. Hill was the only dentist working at the 156th Street office, and she worked there without any direct supervision. In July or August 2002, Dr. Hill began working additional

---

[1] The parties failed to submit a copy of the July 1, 2002, agreement for the court's review.

hours at Emergency Dental. In September 2002, pursuant to Dr. Hill's request, Dr. Hill started working regularly at Emergency Dental.

In September 2002, Derr, president of DDS Consultants, LLC (DDS Consultants), began providing development, management, and consulting services to Emergency Dental. After DDS Consultants started providing its services, Dr. Obeng ceased his day-to-day management of Emergency Dental.

In November 2002, Dr. Hill and Emergency Dental entered into an "Associate Dentist Independent Contractor Agreement" (Agreement).[2] The Agreement defines the parties' relationship as "that of CORPORATION and INDEPENDENT CONTRACTOR." Under health insurance coverage, the Agreement states Emergency Dental shall provide Dr. Hill with group health insurance comparable to coverage "provided all other employees" of Emergency Dental. In other provisions the Agreement uses the term "employment."

The Agreement limits Dr. Hill's ability to engage in any other employment:

> [Dr. Hill] . . . shall devote [Dr. Hill]'s full working time, attention, skill and energies to the advancement of the interests of [Emergency Dental] and the performance of [Dr. Hill]'s duties and responsibilities hereunder.

Notwithstanding this provision, in August 2003, Dr. Hill started working as a part-time clinical instructor at the Creighton University School of Dentistry on Wednesday afternoons between 1:00 p.m. and 5:00 p.m.

---

[2]The parties submitted two versions of the Agreement. The defendants submitted an unsigned copy of the Agreement. Dr. Hill submitted a copy purportedly signed by both Drs. Hill and Obeng. While the two versions are very similar, Dr. Hill's version of the Agreement contains terms not included in the defendants' version. Construing the facts in the light most favorable to Dr. Hill, the court shall accept Dr. Hill's version of the Agreement for summary judgment purposes.

The Agreement gave Emergency Dental the authority to specify "the means and the manner" in which Dr. Hill executed her duties as a dentist:

> [Emergency Dental] shall have the power to determine not only what specific duties shall be performed by [Dr. Hill] but also the power to determine, within reason, the means and the manner by which those duties shall be performed and the time of performing said duties. . . . When present at the Centers or any other location to which [Dr. Hill] is assigned, [Dr. Hill] shall take all reasonable instructions and directions provided by [Emergency Dental] for the Centers or other location.

Notwithstanding this provision, in practice, when Emergency Dental asked Dr. Hill to do things differently and she did not agree, she "wouldn't do them." Additionally, Emergency Dental did not provide Dr. Hill with any instructions on how to perform certain dental procedures, nor did Emergency Dental require Dr. Hill follow any sequence of steps to perform dental procedures.

The Agreement established a minimum number of hours to be worked each week:

> During the Term, [Dr. Hill] shall work a minimum each week of 4 (four) days and 32 (thirty-two) hours and shall otherwise and thereafter devote as much additional time as may be necessary to fulfill [Dr. Hill]'s duties under this Agreement.

Emergency Dental, however, did not require dentists to keep track of their hours. Dentists could be assigned to work at either Emergency Dental office. Emergency Dental informed dentists of the hours of business at both offices, and the dentists, together with Dr. Obeng, determined which hours they would work. If a dentist wanted to see fewer patients in a given day than what her full schedule would allow, she could do so. If Emergency Dental had no scheduled patients, dentists could leave the office.

The Agreement also provided Dr. Hill with annual leave:

> After [Dr. Hill] completes one (1) full year of contractual agreement with [Emergency Dental], [Dr. Hill] shall be entitled to ten (10) days of annual leave. Leave shall include (i) vacation days (five (5) days) and (ii) continuing dental education days (five (5) days). Leave must be approved in advance by [Emergency Dental] at least sixty (60) days prior to such leave. In no event shall [Dr. Hill] take more than five (5) consecutive days of vacation and/or continuing dental education leave at any time. Annual paid leave for any fiscal year may not be carried over to any succeeding fiscal year.

Each dentist determined days to take off for vacation or personal reasons. Dr. Hill did not receive vacation or sick pay from Emergency Dental.

The Agreement guaranteed Dr. Hill minimum monthly compensation of $7,000 during the first six months of the Agreement. There is no evidence, however, indicating Dr. Hill actually received the guaranteed income during the first six months of the Agreement. Emergency Dental compensated each dentist based on the dentist's monthly gross collections. Generally, dentists at Emergency Dental, including Dr. Hill, received 32% of their monthly gross collections. As an incentive to cover for an absent dentist, Emergency Dental paid another dentist, Dan Beninato (Dr. Beninato), 36% of gross collections for two days Dr. Beninato worked for the absent dentist, after Dr. Hill and the other dentists refused to cover the two days.

The Agreement required Emergency Dental to provide Dr. Hill "with facilities and services which [Emergency Dental] deems appropriate for the performance of [Dr. Hill]'s duties." Emergency Dental hired all staff, including the dental assistants who worked with the dentists. While Emergency Dental furnished offices and some equipment, Dr. Hill purchased various tools she personally used, including an Apex locator, a pulse oximeter, and hand instruments.

The Agreement permitted Emergency Dental to terminate the Agreement "upon sixty (60) days prior written notice to [Dr. Hill]."

Emergency Dental did not withhold money for Medicare or for state or federal income taxes from Dr. Hill's compensation. Dr. Hill's compensation also was not reported for unemployment or workers compensation purposes. At the end of the calendar year, Emergency Dental gave Dr. Hill a 1099 form. When Dr. Hill filed her 2003 federal income tax return, she only reported W-2 wages from her teaching position at Creighton University, and she reported her compensation from Emergency Dental as self-employment income and deducted business expenses applicable only to an independent contractor relationship (For 2003, reporting $153,239 in business income, $143,323 in business expenses, and an adjusted gross income of $6,560).

Dr. Hill paid for her own malpractice insurance, health insurance, dental license, and nitrous oxide permit. Emergency Dental did not provide Dr. Hill with a pension or tax-deferred retirement benefit package.

In Spring 2003, Dr. Hill began practicing dentistry at Emergency Dental's Cass Street office.

Three dentists with whom Dr. Hill worked complained about Dr. Hill's work. Emergency Dental also claimed it received patient complaints about Dr. Hill, including complaints Dr. Hill was too rough, inflicted discomfort, did not sufficiently numb patients before starting procedures, and seemed uncaring. Some of Dr. Hill's patients needing follow-up care requested another dentist to perform the follow-up care. Additionally, some dental work performed by Dr. Hill needed to be redone or fixed. Occasionally, Dr. Hill received oral notice of patient complaints. Although it was Emergency Dental's practice to maintain written records of patient complaints, Emergency Dental did not produce any written records of patient complaints about Dr. Hill's work.

During the first few days of September 2003, Emergency Dental orally advised Dr. Hill it was terminating the professional relationship between Emergency Dental and Dr. Hill. On September 6, 2003, Emergency Dental gave Dr. Hill a letter stating, "We regret

to inform you that Emergency Dental is giving you a 60-day notice dated from September 1, 2003. You are required to remove all of your possessions and vacate the premises by November 1, 2003." The letter also requested Dr. Hill to "take no more than one day off during the last two months."

In late September 2003, Dr. Hill initiated a meeting with Derr during which Dr. Hill complained her DEA number (the number identifying a provider who prescribes controlled substances) and Medicaid provider number were used by other dentists without Dr. Hill's permission. Derr advised Dr. Hill he would look into Dr. Hill's concerns, and if any other dentist was using Dr. Hill's number, Derr would stop it. By letter dated September 29, 2003, Dr. Hill restated her concerns regarding the unauthorized use of her DEA and Medicaid provider numbers. Dr. Hill also lodged several additional complaints, including (1) Emergency Dental had defective sterilizing equipment, (2) Emergency Dental relocated Dr. Hill to the Cass Street office without Dr. Hill's consent, (3) Emergency Dental reduced Dr. Hill's workload and hours, (4) Emergency Dental paid Dr. Hill less than it paid other dentists, (5) Emergency Dental terminated the Agreement without providing the requisite written sixty-day notice, (6) Emergency Dental made "disparaging comments about [Dr. Hill] . . . in front of patients and staff," and (7) Dr. Hill suffered "ongoing discrimination" by Emergency Dental.

By letter dated October 2, 2003, Emergency Dental extended Dr. Hill's termination date to November 10, 2003. Emergency Dental paid all compensation due to Dr. Hill through her end date of November 10, 2003, with the exception of approximately $5,000 which Emergency Dental paid to another dentist who performed remedial work on a patient previously treated by Dr. Hill.

After Dr. Hill left Emergency Dental and practiced as Hill Dental, she sent a letter to Emergency Dental discussing a patient. In the letter Dr. Hill declared, "I was an independent contractor for Emergency Dental."

**B.    Procedural History**

On March 16, 2004, Dr. Hill filed a charge of discrimination against Brentwood Dental and Emergency Dental with the Nebraska Equal Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC). On April 30, 2004, Dr. Hill amended her charge of discrimination, naming only Emergency Dental. On October 29, 2004, Dr. Hill received a notice of right to sue Emergency Dental.

On November 16, 2004, Dr. Hill sued Brentwood Dental and Emergency Dental in Nebraska state court. After removal to this court, Dr. Hill added Dr. Obeng and Derr as defendants.

Dr. Hill's complaint, as amended, contains fifteen counts. Count I alleges Emergency Dental is the alter ego of Brentwood Dental. Count II alleges breach of contract by Brentwood Dental. Count III alleges breach of contract by Emergency Dental. Count IV seeks an accounting from Emergency Dental and Brentwood Dental, alleging they "failed to properly account for offsets and deductions and refused to account for sums due." Count V alleges Emergency Dental and Brentwood Dental violated the Nebraska Wage Payment Act, Neb. Rev. Stat. § 48-1228. Count VI alleges all defendants committed slander. Count VII alleges all defendants committed common law retaliation against Dr. Hill, in violation of public policy. Count VIII alleges all defendants discriminated against Dr. Hill on the basis of her sex, in violation of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1104. Count IX alleges all defendants discriminated against Dr. Hill on the basis of her race, in violation of the NFEPA, Neb. Rev. Stat. § 48-1104. Count X alleges all defendants violated Nebraska's whistleblower statute, Neb. Rev. Stat. § 48-1114. Count XI alleges all defendants violated the Nebraska Equal Pay Act, Neb. Rev. Stat. § 48-1221. Count XII alleges all defendants discriminated against Dr. Hill on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2. Count XIII alleges all defendants discriminated against Dr. Hill on the basis of her race, in violation of Title VII, 42 U.S.C. § 2000e-2. Count XIV alleges all defendants paid Dr. Hill wages lower than those paid to comparable male employees, in

violation of Title VII and the Equal Pay Act, 29 U.S.C. § 206(d). Count XV alleges all defendants retaliated against Dr. Hill, in violation of Title VII, 42 U.S.C. § 2000e-3.

The defendants urge this court to grant summary judgment (1) to all defendants on counts V and VII through XV, because Dr. Hill was an independent contractor and not an employee; (2) to all defendants on counts VIII through XIII and XV, because Emergency Dental did not employ at least fifteen employees; (3) to Dr. Obeng and Derr on counts VIII through XV, because as supervisors, Dr. Obeng and Derr cannot be held personally liable; (4) to Brentwood Dental, Dr. Obeng, and Derr on counts VIII through XV, because Dr. Hill did not name them in her NEOC and EEOC claims; (5) to all defendants on Dr. Hill's sex discrimination claims in counts VIII and XII, because Dr. Hill cannot establish a prima facie case of sex discrimination, and she failed to show Emergency Dental's reason for terminating Dr. Hill's contract (i.e., Dr. Hill's poor patient care) was a pretext for intentional sex discrimination; (6) to all defendants on Dr. Hill's race discrimination claims in counts IX and XIII, because Dr. Hill cannot establish a prima facie case of race discrimination, and she failed to show Emergency Dental's reason for terminating Dr. Hill's contract was a pretext for intentional race discrimination; (7) to all defendants on Dr. Hill's whistleblower claim in count X, because Dr. Hill cannot establish a prima facie case of retaliation; (8) to all defendants on Dr. Hill's Equal Pay Act claims in counts XI and XIV, because Emergency Dental did not pay Dr. Hill less than other dentists; (9) to Brentwood Dental on Dr. Hill's breach of contract claim in count II, because Brentwood Dental and Dr. Hill mutually agreed to terminate Dr. Hill's contract with Brentwood Dental; (10) to Emergency Dental on Dr. Hill's breach of contract claim in count III, because Emergency Dental performed all duties imposed upon it under the terms of the Agreement; (11) to all defendants on Dr. Hill's slander claim in count VI, because Dr. Hill has no knowledge of any slanderous comments made about her; (12) on Dr. Hill's alter ego claim in count I, because Brentwood Dental and Emergency Dental are separate entities; and (13) to all defendants on Dr. Hill's state law claims in counts I through VII for lack of jurisdiction. Dr. Hill filed a timely opposition to the summary judgment motions, contending summary judgment is inappropriate because there are genuine issues of material fact in dispute.

## II. DISCUSSION

### A. Jurisdiction

The court exercises jurisdiction over this action pursuant to its federal question jurisdiction under 28 U.S.C. § 1331, because this case arises in part under Title VII. The court has jurisdiction over Dr. Hill's state law claims pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367(a), which confers "jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

### B. Summary Judgment Standard

Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48.

Procedurally, the moving party bears the burden to demonstrate there are no genuine issues of material fact. Celotex, 477 U.S. at 323. Once the moving party successfully carries its burden, the burden shifts to the nonmoving party, who may not rest upon just the allegations or denials of its pleadings, but rather must designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The nonmoving party must offer evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Eighth Circuit cautions "summary judgment should seldom be used in employment-discrimination cases." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted). Summary judgment is appropriate in employment discrimination cases "only in those rare instances where there is no dispute of fact and where there exists only one conclusion." Johnson, 931 F.2d at 1244 (citation omitted). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Crawford, 37 F.3d at 1341 (citation omitted).

### C. Whether Dr. Hill was an Independent Contractor

Because Title VII[3] protects employees, not independent contractors, see Schwieger v. Farm Bureau Ins. Co. of Neb., 207 F.3d 480, 483 (8th Cir. 2000), Dr. Hill's retaliation and discrimination claims in counts VII through XV turn on whether Dr. Hill was an independent contractor or an employee. In determining whether an individual is an employee or an independent contractor, courts consider "the hiring party's right to control the manner and means by which the product is accomplished," an inquiry performed by examining the following nonexhaustive list of factors:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

---

[3]Dr. Hill's claims arise under both Title VII and the NFEPA. Because the NFEPA is patterned after Title VII, Nebraska courts frequently look to federal Title VII cases when reviewing claims under the NFEPA. See City of Fort Calhoun v. Collins, 500 N.W.2d 822, 825 (Neb. 1993); see also Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1039 (8th Cir. 2005). Accordingly, the court shall jointly analyze Dr. Hill's federal and state law retaliation and discrimination claims in counts VII through XV.

Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 489 (8th Cir. 2003) (quoting Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (citing Restatement (Second) of Agency § 220(2) (1958))). "In weighing these factors, 'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" Lerohl, 322 F.3d at 489 (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 324 (1992)). "The district court may properly consider economic aspects of the parties' relationship." Id.

The parties do not dispute the material facts defining the contractual relationship between Dr. Hill and Emergency Dental. Although the parties debate whether those facts create an employment relationship or an independent contractor relationship, resolution of that debate is a question of law. Lerohl, 322 F.3d at 488.

Considering the factors most relevant to the relationship established between Dr. Hill and Emergency Dental, the undisputed facts show Dr. Hill was an independent contractor. First, Dr. Hill is a dentist. The very nature of her work strongly suggests independent contractor status, because dentistry is a highly specialized and skilled profession.

Second, Emergency Dental exercised little control over the manner and means by which Dr. Hill practiced dentistry. Dr. Hill performed dental work on patients without direct supervision. If Emergency Dental asked Dr. Hill to do things differently and Dr. Hill did not agree, she "wouldn't do them." Additionally, Dr. Hill did not derive her dentistry skills from her association with Emergency Dental. Emergency Dental did not provide Dr. Hill with any training or instructions on how to perform dental procedures, and Emergency Dental did not require Dr. Hill follow any sequence of steps to perform dental procedures.

Third, although Emergency Dental hired dental assistants and furnished offices and some equipment, Dr. Hill purchased some of her own dental equipment, including an Apex

locator, a pulse oximeter, and hand instruments. Dr. Hill also paid for other costs of operation, such as her dental license and nitrous oxide permit.

Fourth, Emergency Dental paid Dr. Hill on a commission basis, and she received no employer-paid employee benefits such as a pension, tax-deferred retirement benefit package, malpractice insurance, health insurance, or vacation or sick pay. Dr. Hill received 32% of her monthly gross collections. Emergency Dental did not withhold any money for Medicare or state or federal income taxes, Dr. Hill's compensation was not subject to reporting for unemployment or workers compensation purposes, and for income tax purposes, Dr. Hill reported her compensation from Emergency Dental as self-employment income and deducted business expenses applicable only to an independent contractor.

Fifth, although the Agreement required Dr. Hill work a minimum of thirty-two hours per week, Dr. Hill, together with Dr. Obeng, determined Dr. Hill's hours. Dr. Hill was not required to keep track of her hours, and if she wanted to see fewer patients than what her full schedule would allow, she could do so. If Emergency Dental had no scheduled patients, Dr. Hill could leave the office. Additionally, Dr. Hill chose to work as a part-time clinical instructor at Creighton University on Wednesday afternoons between 1:00 p.m. and 5:00 p.m. Dr. Hill's control over her individual hours, although within the confines of Emergency Dental's hours of operation, favors a finding she was not Emergency Dental's employee.

Finally, the Agreement expressly identified Dr. Hill as an independent contractor. While the court cannot look merely at the label placed on Dr. Hill and Emergency Dental's relationship, see Hunt v. Mo., Dep't of Corr., 297 F.3d 735, 741 (8th Cir. 2002) (stating "an employer may not avoid Title VII by affixing a label to a person that does not capture the substance of the employment relationship" (internal quotation omitted)), Dr. Hill discussed her contract with both Dr. Obeng and an attorney. Based on those discussions, Dr. Hill believed she was an independent contractor. In a July 25, 2004, letter to Emergency Dental, Dr. Hill stated, "I was an independent contractor for Emergency Dental."

In sum, the court finds these undisputed facts are hallmarks of a classic independent contractor relationship and concludes, as a matter of law, Dr. Hill was an independent contractor and not an employee. Therefore, the court shall grant summary judgment to all defendants on Dr. Hill's retaliation and discrimination claims and dismiss counts VII through XV with prejudice.

### D.  Supplemental Jurisdiction

With the dismissal of counts VII through XV, Dr. Hill's complaint fails to allege any action arising under federal law or involving a federal question. Dr. Hill's remaining claims in counts I through VI are based on state law. Under 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." As the Eighth Circuit recently stated in Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006), "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed." Because the only basis for federal jurisdiction has been eliminated and the court finds no compelling reason to retain supplemental jurisdiction over Dr. Hill's remaining state law claims, the court exercises its discretion to decline to exercise supplemental jurisdiction over Dr. Hill's remaining state law claims in counts I through VI.

When a court declines to exercise supplemental jurisdiction over state law claims in a case that has been removed from state court, the court has two options: (1) the court may dismiss the state law claims without prejudice, or (2) the court may remand the case to the state court from which it was removed. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988). In the interests of fairness and comity, the court exercises its discretion to remand Dr. Hill's remaining claims to state court.

### III.  CONCLUSION

For the reasons discussed above, the court concludes Dr. Hill was an independent contractor and not an employee. Accordingly, the court grants summary judgment to all

defendants on Dr. Hill's retaliation and discrimination claims in counts VII through XV. Because the court dismisses all claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over Dr. Hill's state law claims. The court further exercises its discretion to remand Dr. Hill's remaining state law claims to state court.

**IT IS THEREFORE ORDERED:**

1. Defendants Emergency Dental, Inc., and Jared Derr's motion for summary judgment (Filing No. 99) is GRANTED in part;

2. Defendants Brentwood Dental Group, Inc., and Michael Obeng's motion for summary judgment (Filing No. 109) is GRANTED in part;

3. Counts VII through XV are DISMISSED with prejudice;

4. Plaintiff Kerri Hill's remaining state law claims are REMANDED to the District Court of Douglas County, Nebraska;

5. The Clerk of Court is directed to provide a certified copy of this order to the Clerk of Court for the District Court of Douglas County, Nebraska; and

6. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered in accordance with this order.

Dated this 7th day of July, 2006.

BY THE COURT:

s/ William Jay Riley
United States Circuit Judge
(Sitting by Designation)